**KLINE & SPECTER, P.C.**
**By: Thomas Kline, Esquire/28895**
**By: Lee B. Balefsky, Esquire/25321**
**By: Michelle L. Tiger, Esquire/43872**
**1525 Locust Street**
**Philadelphia, PA 19102**
**215-772-1000**
**Attorney for Plaintiffs**

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **George Acaley, Elizabeth Ayre, Robert Blackmon, Angeline Carachilo, Jean Collins Nancy Guerin, Esley Jones, Salvatore C. Lamarca, Betty A. Lawler, Lorraine Lee Mannel, Larry E. Miller, Edward R. Moffitt, Elsie Monroe, Eleanor Oravitz, June Quirk, Joan Smolko, Dolores L. Tatarewicz, Wilhelmena Walker, Lorraine Whitmore, Helen Zalewski** | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action No.** |
| **v.** | : | |
| **Merck & Co., Inc., Peter S. Kim, Ph.D., Louis M. Sherwood, M.D., David W. Anstice, Edward M. Scolnick, M.D** | : | |
| **Defendants,** | : | |

# COMPLAINT

Plaintiffs by way of Complaint against the Defendants, upon information and belief allege as follows:

PARTIES - PLAINTIFFS

1. Plaintiff, George Acaley, is a citizen of Pennsylvania, residing at 840 Bunting Road, Pottsville, PA. Plaintiff, George Acaley, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, George Acaley, ingested Vioxx from approximately 2/29/00 to approximately 11/03. Plaintiff, George Acaley, was diagnosed with a myocardial infarction on 12/26/02 which resulted in stent placement and a second myocardial infarction 7/27/03 which resulted in an unsuccessful stent placement.

2. Plaintiff, Elizabeth Ayre, is a citizen of Pennsylvania, residing at 400 Bedford Street, Apt. #608, Clarks Summit, PA. Plaintiff, Elizabeth Ayre, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Elizabeth Ayre, ingested Vioxx from approximately 12/00 to approximately 9/04. Plaintiff, Elizabeth Ayre, was diagnosed with a myocardial infarction on 2/2/02 which resulted in stent placement.

3. Plaintiff, Robert Blackmon, is a citizen of Texas, residing at 1101 Elmwood Street, Gainesville, TX. Plaintiff, Robert Blackmon, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Robert Blackmon, ingested Vioxx from approximately 5/04 to approximately 10/04. Plaintiff, Robert Blackmon, was diagnosed with a myocardial infarction on 12/15/04.

4. Plaintiff, Angeline Carachilo, is a citizen of Pennsylvania, residing at 352 Main Street, Simpson, PA 18407. Plaintiff, Angeline Carachilo, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Angeline Carachilo, ingested Vioxx from approximately 6/30/99 to approximately 3/03. Plaintiff, Angeline Carachilo, was diagnosed with a myocardial infarction on 7/25/02.

5. Plaintiff, Jean Collins, is a citizen of Illinois, residing at 516 N. Douglas Street, Gilman, IL. Plaintiff, Jean Collins, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Jean Collins, ingested Vioxx from approximately 12/28/01 to approximately 9/04. Plaintiff, Jean Collins, was diagnosed with a myocardial infarction on 6/4/03.

6. Plaintiff, Nancy Guerin, is a citizen of Florida, residing at The Seasons, #914, 1371 S. Ocean Drive, Pompano Beach, FL. Plaintiff, Nancy Guerin, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Nancy Guerin, ingested Vioxx from approximately late 1999 to 9/04. Plaintiff, Nancy Guerin, was diagnosed with a stroke on 5/2/02.

7. Plaintiff, Esley Jones, is a citizen of Pennsylvania, residing at 850 Louisa Street, Apartment 2, Williamsport, PA. Plaintiff, Esley Jones, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Esley Jones, ingested Vioxx from approximately 1/04 to approximately 7/04. Plaintiff, Esley Jones, was diagnosed with a stroke on 4/1/04.

8. Plaintiff, Salvatore C. Lamarca, is a citizen of New York, residing at 107-56 Central Park Road, Plainview, NY. Plaintiff, , took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Salvatore C. Lamarca, ingested Vioxx from approximately 1/7/01 to approximately 4/22/02. Plaintiff, Salvatore C. Lamarca, was diagnosed with a stroke on 9/27/01.

9. Plaintiff, Betty A. Lawler, is a citizen of Pennsylvania, residing at 136 Edgehill Road, Bala Cynwyd, PA. Plaintiff, Betty A. Lawler, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Betty A. Lawler, ingested Vioxx from

approximately 9/00 to approximately 10/25/01. Plaintiff, Betty A. Lawler, was diagnosed with a stroke on 10/25/01.

10. Plaintiff, Lorraine Lee Mannel, is a citizen of Maryland, residing at 104 Canvas Place, Bel Air, MD. Plaintiff, Lorraine Lee Mannel, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Lorraine Lee Mannel, ingested Vioxx in approximately 5/01, from approximately 4/02 to 4/03 and from approximately 7/03 to approximately 9/03. Plaintiff, Lorraine Lee Mannel, was diagnosed with a stroke on 9/10/03.

11. Plaintiff, Larry E. Miller, is a citizen of Pennsylvania, residing at 38 Bluebird Lane, Avella, PA. Plaintiff, Larry E. Miller, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Larry E. Miller, ingested Vioxx from approximately 6/5/02 to approximately 12/02 and from approximately 6/29/03 to approximately 9/30/04. Plaintiff, Larry E. Miller, was diagnosed with a myocardial infarction on 8/28/03.

12. Plaintiff, Edward R. Moffitt, is a citizen of North Carolina, residing at 2907 Major Smith Road, Greenville, NC. Plaintiff, Edward R. Moffitt, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Edward R. Moffitt, ingested Vioxx in approximately 9/01 and from approximately 4/03 to approximately 8/04. Plaintiff, Edward R. Moffitt, was diagnosed with a myocardial infarction on 12/17/01.

13. Plaintiff, Elsie Monroe, is a citizen of New York, residing at 94 East 1st Street, Apartment 14K, New York, NY. Plaintiff, Elsie Monroe, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Elsie Monroe, ingested Vioxx from approximately 2/00 to approximately 5/02. Plaintiff, Elsie Monroe, was diagnosed with a myocardial infarction on 9/7/01.

14. Plaintiff, Eleanor Oravitz, is a citizen of Pennsylvania, residing at 40 North

Jardin Street, Shenandoah, PA. Plaintiff, Eleanor Oravitz, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Eleanor Oravitz, ingested Vioxx from approximately 9/99 to approximately 12/99, from approximately 5/00 to approximately 9/00 and from approximately 1/01 to approximately 9/01. Plaintiff, Eleanor Oravitz, was diagnosed with a myocardial infarction on 9/25/01.

15. Plaintiff, June Quirk, is a citizen of California, residing at 26872 Rocking Horse Lane, Laguna Hills, CA. Plaintiff, June Quirk, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, June Quirk, ingested Vioxx from approximately 6/21/00 to approximately 9/30/04. Plaintiff, June Quirk, was diagnosed with a myocardial infarction on 6/20/03.

16. Plaintiff, Joan Smolko, is a citizen of Pennsylvania, residing at 808 Hilltop Drive, Jessup, PA 18434. Plaintiff, Joan Smolko, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Joan Smolko, ingested Vioxx from approximately 1/01 to approximately 11/01. Plaintiff, Joan Smolko, was diagnosed with a myocardial infarction on 11/30/01.

17. Plaintiff, Dolores L. Tatarewicz, is a citizen of Maryland, residing at 104 Canvas Place, Bel Air, MD. Plaintiff, Dolores L. Tatarewicz, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Dolores L. Tatarewicz, ingested Vioxx in approximately 6/00, from approximately 12/00 to approximately 10/01, from approximately 1/02 to approximately 1/03 and from approximately 8/03 to approximately 11/03. Plaintiff, Dolores L. Tatarewicz, was diagnosed with a myocardial infarction on 12/3/02.

18. Plaintiff, Wilhelmena Walker, is a citizen of New York, residing at 333 Patchen Avenue, #3B, Brooklyn, NY. Plaintiff, Wilhelmena Walker, took Vioxx which contains

the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Wilhelmena Walker, ingested Vioxx from approximately 7/10/00 to approximately 10/03. Plaintiff, Wilhelmena Walker, was diagnosed with a myocardial infarction on 10/11/03.

19. Plaintiff, Lorraine Whitmore, is a citizen of South Carolina, residing at 865 ½ Summers Avenue, Orangeburg, SC. Plaintiff, Lorraine Whitmore, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Lorraine Whitmore, ingested Vioxx from approximately 6/26/99 to approximately 2/26/02. Plaintiff, Lorraine Whitmore, was diagnosed with a myocardial infarction on 1/5/02.

20. Plaintiff, Helen Zalewski, is a citizen of Pennsylvania, residing at 621 Boulevard Avenue, Dickson City, PA. Plaintiff, Helen Zalewski, took Vioxx which contains the active ingredient, rofecoxib, for pain and/or arthritis. Plaintiff, Helen Zalewski, ingested Vioxx from approximately 10/16/99 to approximately 3/00. Plaintiff, Helen Zalewski, was diagnosed with a stroke on 3/20/00.

## PARTIES – DEFENDANTS

21. The Defendant, Merck & Co., Inc., (hereinafter "Merck") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, White House Station, New Jersey 08889.

22. At all times relevant hereto, Defendant Merck was engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical product, Vioxx in the Commonwealth of Pennsylvania.

23. At all times relevant hereto, Defendant Merck conducted business in the Commonwealth of Pennsylvania and maintains a research laboratory therein at 770 Sumneytown Pike, West Point, Pennsylvania.

24. At all times relevant hereto, Defendant Merck regularly conducted business in Philadelphia County, Pennsylvania.

25. Defendant Peter S. Kim, Ph.D. (hereinafter "Dr. Kim") is a citizen of Pennsylvania, residing therein at 119 Henning Drive, North Wales, Montgomery County, Pennsylvania 19446. Dr. Kim was Executive Vice President of Research and Development of Merck Research Laboratories from 2001 to 2002 and is currently President of Merck Research Laboratories and a member of Defendant Merck's Management Committee.

26. At all times relevant hereto, Dr. Kim was in charge of the scientific development, testing, and the development and promulgation of product safety warnings for Vioxx. At all times pertinent hereto, Dr. Kim was a primary decision maker in regard to Vioxx. In his positions as Executive Vice President of Research and Development and then as President of Merck Research Laboratories, Dr. Kim was responsible for protecting the safety of consumers, including the Plaintiffs, by providing adequate warnings of the risks of Vioxx, including, but not limited to, myocardial infarction and stroke.

27. Dr. Kim knew, or in the reasonable exercise of care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiffs herein, to the risk of injuries including, but not limited to, myocardial infarction and stroke, yet Dr. Kim failed to provide adequate warnings regarding such risks.

28. Dr. Kim knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe, yet he withheld that information from consumers, including Plaintiffs,

while providing false assurances of safety, which were provided not only to physicians, but directly to consumers.

29. Dr. Kim failed to exercise reasonable care as set forth above and thus, consumers, including Plaintiffs, were subject to an increased risk of harm of, including, but not limited to, myocardial infarction and stroke. Dr. Kim had undertaken the responsibility of ensuring and promoting drug safety for consumers of Vioxx, including Plaintiffs herein. Plaintiffs have been injured as a proximate cause of Dr. Kim's failure to exercise reasonable care in the design, manufacture, marketing and sale of Vioxx.

30. Defendant, Louis M. Sherwood, M.D., (hereinafter "Dr. Sherwood"), is a citizen of Pennsylvania, residing at 1241 Forest Hill Drive, Lower Gwynedd, Pennsylvania. Dr. Sherwood is the former Senior Vice President, Medical and Scientific Affairs in the U.S. Human Health Division of Defendant Merck, a position he held for ten years.

31. While employed by Merck, Dr. Sherwood was responsible for all Medical Services, Academic and Professional Affairs, Clinical Development, and Outcomes Research. Dr. Sherwood also supervised regional Medical Directors across the United States. At Merck, Dr. Sherwood reviewed and supervised clinical trials regarding Vioxx and monitored clinical trials and scientific information regarding Vioxx and competitors of Vioxx. Dr. Sherwood regularly reviewed medical literature pertaining to Vioxx and other COX-2 inhibitors.

32. In his position as Senior Vice President, Medical and Scientific Affairs in the U.S. Human Health Division of Defendant Merck, Dr. Sherwood was principally responsible for protecting the safety of consumers, including Plaintiffs herein, by reviewing the clinical trials and the medical literature and then using this information to provide adequate warnings of the risks of Vioxx, including, but not limited to, myocardial infarction and stroke.

33. Dr. Sherwood knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiffs herein, to the risk of injuries including, but not limited to, myocardial infarction and stroke, yet Dr. Sherwood failed to provide adequate warnings regarding such risks.

34. Dr. Sherwood knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe, yet he withheld that information from consumers, including Plaintiffs, while providing false assurances of safety which were provided not only to physicians but directly to consumers.

35. Dr. Sherwood failed to exercise reasonable care as set forth above and thus, consumers, including Plaintiffs, were subjected to an increased risk of harm of, including, but not limited to, myocardial infarction and stroke.

36. Plaintiffs have been injured as a proximate result of Dr. Sherwood's failure to exercise reasonable care in the design, manufacture, marketing and sale of Vioxx.

37. In his position as Senior Vice President, Medical and Scientific Affairs in the U.S. Human Health Division of Defendant Merck, Dr. Sherwood was responsible for ensuring consumer safety, including Plaintiffs herein, by providing adequate warnings of the risks of Vioxx, including, but not limited to, myocardial infarction and stroke.

38. Dr. Sherwood knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiffs herein, to the risk of injuries including, but not limited to, myocardial infarction and stroke, yet Dr. Sherwood failed to provide adequate warnings regarding such risks.

39. Defendant, David W. Anstice (hereinafter "Mr. Anstice") is a citizen of Pennsylvania, residing at 5280 Militia Hill Road, Plymouth Meeting, Pennsylvania. Mr. Anstice

is President of Merck's Human Health Division and has been employed with the company since 1974. From 1997 to 2002, Mr. Anstice was President of the Human Health Division of Defendant Merck. Mr. Anstice is based at the North Wales, Pennsylvania location of Defendant, Merck and is a member of the Management Committee of Defendant Merck.

40. As a member of the Management Committee, Mr. Anstice assists Merck's Chairman, President and Chief Executive Officer in managing business operations and in formulating growth strategies and corporate policies. Mr. Anstice is and was directly responsible for introducing new drugs to the market, including Vioxx.

41. Mr. Anstice, at all relevant times hereto, was responsible for Defendant Merck's Human Health business in the United States and elsewhere. From 1997 to 2002, he was responsible for Defendant Merck's prescription drug business and the marketing of Merck's pharmaceutical products in the United States. Mr. Anstice is and was responsible for protecting the safety of consumers, including Plaintiffs herein, by providing adequate warnings of the risks of Vioxx, including, but not limited to, myocardial infarction and stroke.

42. Mr. Anstice knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiffs herein, to the risk of injuries including, but not limited to, myocardial infarction and stroke, yet Mr. Anstice failed to provide adequate warnings regarding such risks.

43. Mr. Anstice knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe, yet he withheld that information from consumers, including Plaintiffs, while providing false assurances of safety, which were provided not only to physicians but directly to consumers.

44. Mr. Anstice failed to exercise reasonable care as set forth above and thus,

consumers, including Plaintiffs, were subjected to an increased risk of harm of, including but not limited to, myocardial infarction and stroke. Mr. Anstice had undertaken the responsibility of ensuring the safety of Vioxx. Plaintiffs have been injured as a proximate result of Mr. Anstice's failure to exercise reasonable care in the design, manufacture, marketing and sale of Vioxx.

45. Mr. Anstice was responsible for protecting the safety of consumers, including Plaintiffs herein, by providing adequate warnings of the risks of Vioxx, including, but not limited to, myocardial infarction and stroke.

46. Mr. Anstice knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiffs herein, to the risk of injuries including, but not limited to, myocardial infarction and stroke, yet Mr. Anstice failed to provide adequate warnings regarding such risks.

47. Defendant Edward M. Scolnick, M.D. (hereinafter "Dr. Scolnick") is currently a citizen of Massachusetts, residing at 1201 Magnolia Drive, Wayland, Middlesex County, MA 01778. Prior to August 2003, however, Dr. Scolnick resided at 811 Wickfield Road, Wynnewood, Montgomery County, PA 19096. Dr. Scolnick was the senior most scientist at Merck from the early 1990's to the date of his retirement in 2003. Dr. Scolnick was President of Merck Research Laboratories and was a member of Merck's Board of Directors. He was a director, officer and shareholder of Merck.

48. At all times relevant hereto, and while he was living in Pennsylvania, Dr. Scolnick was in charge of the scientific development and testing of Vioxx, as well as the development and promulgation of product safety warnings for Vioxx. At all times pertinent hereto, Dr. Scolnick was a primary decision maker in regard to Vioxx. In his position as President of Merck Research Laboratories during the time that Vioxx progressed from the pre-

approval process through the time of post-marketing trials, including VIGOR, Dr. Scolnick was responsible for protecting the safety of consumers, including the Plaintiffs, by providing adequate warnings of the risks of Vioxx, including, but not limited to myocardial infarction and stroke.

49. Dr. Scolnick knew, or in the reasonable exercise of care, should have known, that Vioxx was unsafe and subjected consumers, including Plaintiffs herein, to the risk of injuries including, but not limited to, myocardial infarction and stroke, yet Dr. Scolnick failed to provide adequate warnings regarding such risks.

50. Dr. Scolnick knew, or in the reasonable exercise of due care, should have known, that Vioxx was unsafe, yet he withheld that information from consumers, including Plaintiffs, while providing false assurances of safety, which were provided not only to physicians, but directly to consumers.

51. Dr. Scolnick failed to exercise reasonable care as set forth above and thus, consumers, including Plaintiffs, were subject to an increased risk of harm of, including, but not limited to, myocardial infarction and stroke. Dr. Scolnick had undertaken the responsibility of ensuring and promoting drug safety for consumers of Vioxx, including Plaintiffs herein. Plaintiffs have been injured as a proximate cause of Dr. Scolnick's failure to exercise reasonable care in the design, manufacture, marketing and sale of Vioxx.

52. Merck, Dr. Kim, Dr. Sherwood, Mr. Anstice & Dr. Scolnick are hereinafter collectively referred to as "Defendants."

## JURISDICTIONAL STATEMENT

53. This Court has jurisdiction pursuant to 28 U.S.C. §1332. Plaintiffs hereby aver that the amount in controversy in the above captioned matter exceeds the jurisdictional

limits that said controversy arises between citizens of different states as is required by the aforementioned statute in order to invoke the "Diversity of Citizenship" jurisdiction of this Court. Plaintiffs also hereby invoke the pendent jurisdiction of this Court to hear and decide claims arising under state law. This Court also has jurisdiction over Defendants because it is a corporation which is authorized to conduct, and in fact does conduct, substantial business in the Commonwealth of Pennsylvania. These defendants have sufficient minimum contacts with Pennsylvania or otherwise intentionally avail themselves of the consumer market within Pennsylvania through the promotion, sale, marketing and/or distribution of its products in the Commonwealth to render the exercise of jurisdiction by the Pennsylvania Courts permissible under traditional notions of fair play and substantial justice.

## BACKGROUND

54. Vioxx is the brand name of rofecoxib, one of a class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain. Prostaglandins are COX (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid to produce prostaglandins.

55. Vioxx is a COX-2 inhibitor. COX-2 is an enzyme which is produced at points of inflammation and pain. Inhibiting COX-2 relieves inflammation and pain, however it also causes an imbalance between Prostacyclin (which has the effect of keeping the blood thin and the blood vessels wide) and Thromboxane (which has the effect of constricting blood vessels and causing platelets to aggregate.) Thromboxane is unopposed when Prostacyclin is inhibited, thus increasing the risk of blood clots.

56. In pre-marketing clinical trials, prior to the submission of the Application to Market a New Drug for Human Use (hereinafter "NDA"), Defendants realized the potential for Vioxx to favor platelet aggregation and thus increase the risk of cardiovascular events including, but not limited to myocardial infarction and stroke.

57. Defendants submitted an NDA for rofecoxib to the United States Food and Drug Administration (hereinafter "FDA") on November 23, 1998, for tablets, at doses of 12.5 mg and 25 mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-042 by the FDA.

58. Defendants also submitted an NDA for rofecoxib to the FDA on November 23, 1998, for oral suspension, at doses of 12.5 mg/mL and 25 mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-052 by the FDA.

59. On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

60. Defendants submitted a Supplemental New Drug Application, NDA-007, with the goal of establishing a gastrointestinal ("GI") safety claim for rofecoxib. In conjunction with this NDA, Defendants performed a study entitled the Vioxx GI Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was conducted from January 6, 1999 through March 17, 2000.

61. The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50 mg daily compared to patients in the group taking Naproxen 1000 mg/day," and (2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

62. The results of the VIGOR Study showed an increased risk of myocardial infarction and stroke in patients taking Vioxx as compared to those patients taking Naproxen. Following VIGOR, Defendants made certain representations regarding the safety of Vioxx.

63. On September 17, 2001, Thomas W. Abrams, R.Ph., MBA, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Defendants relating to "promotional activities and materials for the marketing of Vioxx (rofecoxib) tablets."

64. The Warning Letter stated that Defendants had "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the VIGOR study, and thus, misrepresents the safety profile for Vioxx." The letter further stated:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions (MIS) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (Naproxen).

65. On April 11, 2002, the FDA approved a supplemental application for the use of Vioxx (rofecoxib) for rheumatoid arthritis, adding this indication to the previously approved indications for osteoarthritis and pain. The FDA also approved new labeling, a "Dear Doctor" letter, and a new patient package insert. The revised labeling contained information concerning the results of the VIGOR Study, however, the risk of , including, but not limited to myocardial

infarction and stroke were not listed in the warnings section of the label. Instead, this information was buried in the clinical study information, with the provision that the clinical significance of the increased cardiovascular events was unknown.

66. Both the initial labeling and the revised labeling were ineffective because they did not properly advise physicians and patients of the potential cardiovascular side effects of Vioxx.

67. Despite knowledge of the ineffectiveness of the warnings, and despite knowledge that Vioxx could cause serious cardiovascular side effects, including, but not limited to myocardial infarction and stroke, Defendants concealed and/or downplayed the dangers associated with Vioxx, and continued to market the drug in the United States and abroad.

68. Defendants engaged in a $500 million direct-to-consumer advertising campaign that featured numerous celebrities and touted the perceived benefits of Vioxx without adequately warning consumers of the serious cardiovascular risks.

69. The 2001 Merck Annual Report stated:

> The Company also noted that a number of federal and state lawsuits, involving individual claims as well as purported class actions, have been filed against the Company with respect to Vioxx. . . . The lawsuits include allegations regarding gastrointestinal bleeding and cardiovascular events. The Company believes that these lawsuits are completely without merit and will vigorously defend them.

70. In its January 23, 2001 8-K filing with the Securities and Exchange Commission, there was no mention of the cardiac and cardiothrombotic findings of the VIGOR study:

> "Our results reflect the strength of our growth strategy," Mr. Gilmartin said. "Our five key products, VIOXX, ZOCOR, COZAAR/HYZAAR*, FOSAMAX and SINGULAIR, drove

> Merck's performance for the year and created a powerful platform for growth." These products accounted for 57% of Merck's worldwide human health sales for 2000 and 61% for the fourth quarter.
>
> "Each of the five medicines offers unique competitive advantages," Mr. Gilmartin said. **VIOXX**, a once-a-day medicine, is the only COX-2 indicated in the United States both for osteoarthritis and acute pain. Since its extraordinarily successful 1999 launch, **VIOXX** has become the world's fastest growing branded prescription arthritis medicine, and it is already Merck's second largest-selling medicine. In the United States, **VIOXX** now accounts for approximately 50 percent of new prescriptions in the COX-2 class, despite being second to market in this class in the United States. **VIOXX** achieved $2.2 billion in sales for the full year 2000, with $700 million in the fourth quarter.
>
> A Food and Drug Administration (FDA) Advisory Committee meeting is scheduled for Feb. 8 to review labeling changes Merck has requested based on the strong results of the VIGOR Study. This 8,000-patient gastrointestinal outcomes research study, in which **VIOXX** reduced the risk of serious gastrointestinal complications by half compared to the NSAID naproxen, was published in November in THE NEW ENGLAND JOURNAL OF MEDICINE. Another study, presented in November, showed that **VIOXX** significantly reduced moderate-to-severe acute pain after dental surgery to a greater degree compared to codeine combined with acetaminophen.

71. In 2001, Dr. Eric J. Topol published a report in the Journal of the American Medical Association which analyzed data from several clinical trials involving Vioxx and Celebrex. Dr. Topol found that the danger of heart attacks and strokes was increased in patients taking Vioxx.

72. In 2002, Dr. Wayne Ray conducted a study of patients taking high doses of Vioxx and found that those patients had significantly more, including, but not limited to, myocardial infarctions and strokes.

73. In August 2004, Dr. David Graham, an FDA researcher conducted an

epidemiological study based on 1.4 million patients in the Kaiser Permanente Health Care System and found a heightened cardiovascular risk among Vioxx users.

74. Despite the foregoing, Defendants continued to represent to consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug. Merck downplayed any potential cardiovascular and gastrointestinal side effects of Vioxx, promoting it as safer and more efficacious than other medications approved for treatment of similar conditions.

75. Plaintiffs took Vioxx which contains the active ingredient, rofecoxib, for arthritis and other symptoms of pain.

76. On September 30, 2004, Merck announced the voluntary withdrawal of VIOXX after a three-year study of 2,600 patients (APPROVE) which showed that those who took Vioxx were more likely to suffer heart attacks and strokes than others who took a placebo. Although Merck has asserted that these findings were based upon "new data," it is obvious that Merck ignored the pre-existing data showing increased risk of heart attacks and strokes with VIOXX and misrepresented the safety of the drug to physicians and to consumers.

77. Merck knowingly downplayed and, in certain instances, withheld from publication, the severity of cardiovascular and cerebrovascular risks associated with Vioxx. For example, Merck downplayed this information in connection with the *New England Journal of Medicine's* November 2000 reporting regarding the VIGOR study, authored by Merck sponsored authors.

a. Three myocardial infarctions, all in the Vioxx group of the VIGOR study, were not included by Merck or defendants in the data submitted to the *New England Journal of Medicine's* November 2000 report regarding the VIGOR

study;

b. The three unreported myocardial infarctions in the Vioxx group of the VIGOR study, were known to at least two of the authors at least two weeks before the authors submitted the first of two revisions of the *New England Journal of Medicine's* November 2000 report of the VIGOR study;

c. The three unreported myocardial infarctions in the Vioxx group of the VIGOR study, were known to at least two of the authors at least four and a half months before the publication of *New England Journal of Medicine's* November 2000 report of the VIGOR study;

d. At no time after the publication of *New England Journal of Medicine's* November 2000 report of the VIGOR study, did Merck or defendants report to the editors of the *New England Journal of Medicine* the three additional myocardial infarctions unreported in the original article published in November, 2000;

e. At no time after the publication of *New England Journal of Medicine's* November 2000 report of the VIGOR study, did Merck or defendants attempt to publicize, disclose or reveal (outside of litigation) in any medical journal including the *New England Journal of Medicine* the three additional myocardial infarctions unreported in the original article published in November, 2000;

f. On December 29, 2005, the editors of the *New England Journal of Medicine* (Gregory D. Curfman, M.D., Stephen Morrisey, Ph.D. and Jeffrey M. Drazen, MD) published an Editorial entitled "Expressions of Concern: Bombadier et al., "Comparison of Upper Gastrointestinal Toxicity or Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis." N Egl. J. Med 200; 343:1520-8."

g. Prior to the December 29, 2005 publication of the “Expressions of Concern”, there was no public disclosure (outside of litigation) by defendants in any medical journal including the *New England Journal of Medicine* of the three additional myocardial infarctions unreported in the original article published in November, 2000.

h. The fact that the three unreported myocardial infarctions in the Vioxx group of the VIGOR study were not included in the publication of *New England Journal of Medicine's* November 2000 report of the VIGOR study, made certain calculations and conclusions in the article incorrect.

i. The fact that the three unreported myocardial infarctions in the Vioxx group of the VIGOR study were not included in the publication of *New England Journal of Medicine's* November 2000 report of the VIGOR study, resulted in an understatement of the difference in risk of myocardial infarctions between the Vioxx and Naproxen Groups in the VIGOR study;

j. Other data on cardiovascular adverse events was deleted from the VIGOR manuscript by defendants, or defendants’ employees or agents, two days before it was initially submitted to the *New England Journal of Medicine* on May 18, 2000.

k. In the December 29, 2005 article by the editors of the *New England Journal of Medicine* (Gregory D. Curfman, M.D., Stephen Morrisey, Ph.D. and Jeffrey M. Drazen, MD) published an Editorial entitled “Expressions of Concern: Bombadier et al., “Comparison of Upper Gastrointestinal Toxicity or Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis.” N Egl. J. Med 200; 343:1520-8," the editors ask the authors of the publication of *New England Journal of*

*Medicine's* November 2000 report of the VIGOR study, to submit a correction to the *New England Journal of Medicine.*

l. As of this date, the authors of the *New England Journal of Medicine's* November 2000 report of the VIGOR study have not submitted a correction.

78. Consumers, including Plaintiffs herein, detrimentally relied on Defendants' misrepresentations and material omissions, thus subjecting Plaintiffs to the unreasonable risk of, including, but not limited to myocardial infarction and stroke.

## CAUSES OF ACTION
## COUNT I - NEGLIGENCE

**Plaintiffs vs. Merck & Company, Inc., Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.**

79. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege as follows:

80. Despite the numerous studies and clinical trials showing an increased risk of cardiovascular side effects, Defendants, Merck & Company, Inc., Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., continued to represent to consumers that Vioxx was safe and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug. The Defendants also downplayed potential cardiovascular side effects of the drug, promoting it as safer and more efficacious than other medications approved for treatment of similar conditions.

81. Defendants knew, or in the exercise of reasonable care, should have known, that the aforesaid product was of such a nature that if not properly manufactured, labeled, tested,

and inspected before sold, the product was likely to cause injury to the product's user.

82. Defendants were negligent in the design, manufacture, testing, promotion, advertising, warning, labeling, marketing, distributing and sale of Vioxx in that Defendants:

a) Failed to use due care in the design, testing and manufacturing of Vioxx so as to prevent the aforementioned risks, including, but not limited to myocardial infarction and stroke, to individuals when Vioxx was used as a medication for arthritis and other pain;

b) Failed to issue proper warnings regarding all possible adverse side effects associated with the use of Vioxx and the comparative severity and duration of such adverse effects, despite the fact the Defendants knew, or should have known that numerous case reports, adverse event reports, and other data that associated Vioxx with myocardial infarction and stroke;

c) Failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Vioxx;

d) Failed to provide adequate training and information to medical care providers for the appropriate use of Vioxx;

e) Failed to warn Plaintiffs and healthcare providers, prior to actively encouraging and promoting the sale of Vioxx, either directly, or indirectly, orally, in writing, or though other media about the following:

   (1) The adverse side effects associated with the use of Vioxx, including, but not limited to myocardial infarction and stroke;

   (2) The possibility of dying or becoming permanently disabled as a result of using Vioxx;

f) Failed to timely develop and implement a safer, alternative design of Vioxx, which would meet the same need without the known risks associated with Vioxx and which would not have made the product too expensive to maintain its utility.

83. Despite the fact that Defendants knew, or reasonably should have known, that Vioxx caused unreasonable and dangerous side effects, including, but not limited to myocardial

infarction and stroke, which many users would be unable to remedy by any means, Defendants continued to promote and market Vioxx to consumers, including Plaintiffs, without warning Plaintiffs of these side effects, when safer, alternative pharmaceutical agents for the treatment of arthritis and muscular pain symptoms were available.

84. Defendants knew, or reasonably should have known, that consumers such as the Plaintiffs would foreseeably suffer injury as a result of Defendants's failure to exercise ordinary care as set forth above.

85. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiffs suffered injuries, including strokes, heart attacks, and other injuries. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiffs have been prevented from pursuing their normal activities and employment, have experienced severe pain and suffering and mental anguish, and have been deprived of their ordinary pursuits and enjoyments of life.

WHEREFORE, Plaintiffs demand judgment against Defendants, Merck & Company, Inc., Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick in the amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) and in excess of local arbitration limits, exclusive of pre-judgment interest and post-judgment interest.

## COUNT II - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**Plaintiffs vs. Merck & Company, Inc., Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.**

86. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege as follows:

87. Defendants manufactured, sold, distributed, marketed, and/or promoted Vioxx that was ingested by Plaintiffs.

88. The Vioxx ingested by the Plaintiffs was expected to, and did reach her/him without a substantial change in condition.

89. Merck, its agents and employees, including, but not limited to Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., in manufacturing, selling, distributing, supplying, marketing and/or promoting Vioxx, impliedly warranted that Vioxx was not unreasonably dangerous, and instead warranted that it was of merchantable quality, reasonably fit and safe for its intended, reasonably foreseeable use as a medication for arthritis and muscular pain.

90. Merck, its agents and employees, including, but not limited to Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., breached these warranties in that Vioxx was not of merchantable quality, was not fit for its intended and reasonably foreseeable use, and was unreasonably dangerous in light of the risk of side effects associated with its use, including, but not limited to myocardial infarction and stroke, and in light of other risks of serious injuries and adverse side effects to foreseeable users.

91. Merck, its agents and employees, including, but not limited to defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., also failed to provide adequate warnings for Vioxx, rendering it unreasonably dangerous and unfit for the intended and/or reasonably foreseeable purposes of use, in breach of this warranty.

92. Plaintiffs justifiably and detrimentally relied upon the warranties and representations of defendants in the purchase and use of Vioxx.

93. Vioxx, as purchased and ingested by Plaintiffs was formulated,

manufactured, marketed, packaged and labeled by Defendants with implied warranties of merchantability and of fitness for its intended purpose, without risk of permanent damage to the purchaser's and/or consumer's body and health. Defendants were a seller of, and merchant of Vioxx.

94. Plaintiffs relied upon defendants' implied warranties and upon the Defendants' skill and judgment, in purchasing and ingesting Vioxx .

95. Defendants breached these implied warranties to Plaintiffs in violation of relevant provisions of the applicable Uniform Commercial Code (a) by manufacturing, marketing, packaging, labeling, and selling products to Plaintiffs with the risk of injuries, including without limitation, strokes and cardiovascular injury, without warning or disclosure thereof by package and label of such risk to Plaintiffs or their physicians or pharmacists, and/or without so modifying or excluding such implied warranties; (b) by manufacturing, marketing, packaging, labeling and selling to Plaintiffs the product Vioxx, which failed to control Plaintiffs' arthritis and pain and/or suppress Plaintiffs' pain in a safe manner and without injuries, including, without limitation, myocardial infarction and/or stroke and (c) by manufacturing, marketing, packaging, labeling, and selling to Plaintiffs the product Vioxx, which caused Plaintiffs serious physical injury, pain and attendant economic loss.

96. As a proximate result of Defendants' breach of implied warranties, Plaintiffs have incurred and will continue to incur: serious physical injury, pain and suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical and hospital expenses and other expenses related to the diagnosis and treatment thereof, for which Defendants are liable.

97. As a direct and proximate result of the acts and omissions of the Defendants,

Plaintiffs suffered injuries, including strokes, heart attacks and other injuries. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiffs have been prevented from pursuing their normal activities and employment, have experienced severe pain and suffering and mental anguish, and have been deprived of their ordinary pursuits and enjoyments of life.

WHEREFORE, Plaintiffs demand judgment against Defendants, Merck & Company, Inc., Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D., in the amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) and in excess of local arbitration limits, exclusive of pre-judgment interest and post-judgment interest.

**COUNT III - BREACH OF EXPRESS WARRANTY**
**Plaintiffs vs. Merck & Company, Inc., Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick, M.D.**

98. The Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint as if fully set forth herein, and further allege as follows:

99. Defendants manufactured, sold, distributed, marketed, and/or promoted Vioxx, which was used by Plaintiffs, and this drug was expected to, and did reach Plaintiffs without a substantial change in condition.

100. Merck, its agents and employees, including but not limited to Defendants, Peter S. Kim, Ph.D., David Anstice, Louise Sherwood, M.D. and Edward Scolnick, M.D., in manufacturing, selling, distributing, supplying, marketing and/or promoting the drug Vioxx, expressly warranted that the drug was safe and effective as a medication for arthritis and muscular pain.

101. Merck, its agents and employees, including but not limited to Defendants, Peter S. Kim, Ph.D., David Anstice, Louise Sherwood, M.D. and Edward Scolnick, M.D., breached this warranty in that Vioxx was not safe and effective for its intended, reasonably foreseeable use as a medication for arthritis and muscular pain because of the risk of serious cardiovascular side effects associated with its use and in light of other risks of serious injuries to foreseeable users.

102. Defendants failed to provide adequate warnings for Vioxx, rendering it unreasonably dangerous and unfit for the intended, reasonably foreseeable purposes for which it is used, in breach of warranty.

103. Plaintiffs justifiably and detrimentally relied upon the warranties and representations of the Defendants in the purchase and use of the product.

104. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiffs suffered serious and permanent injuries. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiffs have been prevented from pursuing their normal activities and employment, have experienced severe pain and suffering and mental anguish, and have been deprived of their ordinary pursuits and enjoyments of life.

105. Defendants, through a direct-to-consumer advertising campaign, affirmation of fact and promises relating to their products to the FDA, prescribing physicians, and the general public, including the Plaintiffs herein, expressly warranted that their product, Vioxx, was effective and safe for its intended use.

106. These warranties came in the form of: (a) publicly-made written and verbal assurances of safety and efficacy by Merck, its agents, and employees, including but not limited to Defendants, Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D. and Edward Scolnick,

M.D., including, but not limited to statements of clinical data that purported to report the incidence of adverse events experienced for the product Vioxx, but which in fact grossly understated such incidence; and (b) advertisements the sole purpose of which was to create demand for Defendants product, Vioxx, but which failed to warn of the risks inherent to ingestion of Defendants' product, Vioxx or the indications thereof.

107. At the time of the making of these express warranties, Defendants had knowledge or reason to know, or in the exercise of reasonable care should have known of the purpose for which Vioxx was to be used and warranted same to be in all respects safe, effective and proper for such purpose.

108. Merck, its agents and employees of Defendant, including, but not limited to Defendants, Peter S. Kim, Ph.D., David Anstice, Louise Sherwood, M.D. and Edward Scolnick, M.D., themselves drafted the documents and/or made the statements upon which these express warranty claims are based, and in so doing, defined the terms of those warranties.

109. Vioxx did not conform to these express representations in that it was neither safe nor effective as a pain reliever, and it produced serious side effects, including, but not limited to, life threatening injuries such as myocardial infarction and stroke.

110. As such, the Defendants' pain reliever product, Vioxx, was neither in conformity with the promises, descriptions or affirmations of fact made of this drug by Defendants nor adequately contained, packaged, labeled, or fit for the ordinary purposes for which such product was to be used.

111. Defendants breached express warranties to Plaintiffs in violation of the relevant provisions of the applicable Uniform Commercial Code: (a) by manufacturing, marketing, labeling, and selling a pharmaceutical product to Plaintiffs in such a way that

misstated the risk of injuries, including, without limitation, stroke and myocardial infarction, without warning or disclosing such risk to Plaintiffs or their physician or pharmacist, and/or without so modifying or excluding such erroneous express warranties; (b) by manufacturing, marketing, packaging, labeling, and selling to Plaintiffs Vioxx, and failing to provide a safe pain reliever that did not cause injuries, including, without limitation, stroke and myocardial infarction; and (c) by manufacturing, marketing, packaging, labeling, and selling to Plaintiffs the product Vioxx causing Plaintiffs serious physical injury, pain and suffering.

112. As a proximate result of all Defendants' breach of express warranties, Plaintiffs ingested Vioxx and suffered serious and permanent injuries. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiffs have been prevented from pursuing their normal activities and employment, have experienced severe pain and suffering and mental anguish, and have been deprived of their ordinary pursuits and enjoyments of life. Plaintiffs have incurred and will continue to incur: serious physical injury, pain and suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical, hospital, surgical expenses and other expenses related to diagnosis and treatment thereof, for which Defendants are liable.

WHEREFORE, Plaintiffs demand judgment against Defendants, in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) and in excess of local arbitration limits, exclusive of pre-judgment interest and post-judgment interest.

**COUNT IV - FRAUD AND MISREPRESENTATION**
**Plaintiffs vs. Merck & Company, Inc., Peter S. Kim, Ph.D., David Anstice,**

**Louis Sherwood, M.D., and Edward Scolnick, M.D.**

113. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege as follows:

114. Defendants, having undertaken the manufacturing, marketing, dispensing, distribution, and promotion of Vioxx, owed a duty to provide accurate and complete information regarding Vioxx.

115. Defendants' advertising program, using affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of Vioxx was safe for human use and did not have unacceptable side effects.

116. Defendants spent $500 million dollars on a direct-to-patient advertising campaign.

117. Defendants misrepresented to Plaintiffs and to members of the general public their knowledge about the propensities of Vioxx to cause injuries such as those sustained by the Plaintiffs.

118. Defendants concealed, failed to disclose, misstated, downplayed, and understated the health hazards and risks associated with the use of Vioxx.

119. Defendants falsely and deceptively kept relevant information from Vioxx users and minimized concerns regarding the safety of Vioxx to induce Plaintiffs and the general public to purchase and use Vioxx.

120. In justifiable and detrimental reliance on the truth of Defendants' representations about the safety of Vioxx, Plaintiffs purchased the product and used the product in the manner and for the purpose intended as represented and instructed by Defendants.

121. The representations, misrepresentations, acts and omissions made by

Defendants deprived the Plaintiffs and their physicians and other foreseeable users of Vioxx of the opportunity of free or knowing choice as to whether or not to expose themselves to the aforementioned dangers of ingesting Vioxx.

122. As a direct and proximate result of Plaintiffs' lack of awareness of the dangers of Vioxx, caused by the fraudulent acts and omissions of the Defendants, Plaintiffs ingested Vioxx and suffered serious and permanent injuries, including but not limited to myocardial infarction and/or stroke. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiffs have been prevented from pursuing their normal activities and employment, have experienced severe pain and suffering and mental anguish, and have been deprived of their ordinary pursuits and enjoyments of life.

WHEREFORE, Plaintiffs demand judgment against Defendants, in the amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) and in excess of local arbitration limits, exclusive of pre-judgment interest and post-judgment interest.

## COUNT V - VIOLATION OF CONSUMER PROTECTION LAWS

**Plaintiffs vs. Merck & Company, Inc., Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D.**

123. Plaintiffs incorporate by reference all other paragraphs in this Complaint as if fully set forth herein and further allege as follows:

124. Plaintiffs purchased and used Vioxx primarily for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

125. Unfair methods of competition and unfair or deceptive acts or practices are

defined and declared unlawful by the consumer protection laws.

126. Defendants' specific unfair or deceptive acts or practices that were proscribed by law, include the following, without limitation:

a. Representing that goods or services have... characteristics, ingredients, uses, benefits or quantities that they do not have...;
b. Advertising goods or services with intent not to sell them as advertised; and
c. Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

127. Defendants violated consumer protection laws through their use of false and misleading misrepresentations or omissions of material fact relating to the safety and efficacy of Vioxx.

128. Defendants uniformly communicated the purported benefits of Vioxx while failing to disclose the serious and dangerous side effects related to the use of Vioxx and/or the true state of Vioxx's regulatory status, its safety, its efficacy and/or its usefulness. Merck made these representations to physicians and also to patients such as Plaintiffs, in a $500 million direct-to-consumer advertising campaign.

129. Defendants' conduct in connection with their sale of Vioxx was also impermissible and illegal in that it created a likelihood of confusion or misunderstanding, because Defendants misleadingly, falsely and/or deceptively misrepresented and/or omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Vioxx.

130. As a result of these violations of consumer protection laws, Plaintiffs have incurred and will continue to incur: serious physical injury, pain and suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical, hospital and surgical

expenses and other expenses related to the diagnosis and treatment thereof, for which Defendants are liable. As a further direct and proximate result of the acts and omissions of the Defendants, Plaintiffs suffered injuries, including strokes, heart attacks and other injuries. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiffs have been prevented from pursuing their normal activities and employment, have experienced severe pain and suffering and mental anguish, and have been deprived of their ordinary pursuits and enjoyments of life.

WHEREFORE, Plaintiffs demand judgment against Defendants, in the amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) and in excess of local arbitration limits, exclusive of pre-judgment interest and post-judgment interest.

**COUNT VI - PUNITIVE DAMAGES**

**Plaintiffs vs. Merck & Company, Inc., Peter S. Kim, Ph.D., David Anstice, Louis Sherwood, M.D., and Edward Scolnick, M.D.**

131. Plaintiffs incorporate by reference all other paragraphs in this Complaint as if fully set forth herein and further allege as follows:

132. Because of the reckless, wanton and intentional conduct of Defendants, Plaintiffs, foreseeable users of Vioxx, suffered serious personal injury.

133. Defendants knowingly withheld and/or misrepresented material and relevant information required under the FDA's regulations and other statutes and regulations.

134. The Plaintiffs are entitled to punitive damages because Defendants' failure to warn, as set forth herein, was reckless and without regard for the public's safety and welfare.

135. Defendants misled both the medical community and public at large, including the Plaintiffs, by making false representations about the safety of Vioxx.

136. Defendants downplayed, understated and/or disregarded their knowledge of the serious and permanent side effects associated with the use of their product despite available information demonstrating that these product were likely to cause serious and sometimes fatal side effects to Vioxx users, including Plaintiffs.

137. Defendants were or should have been in possession of evidence demonstrating that Vioxx caused serious side effects including, but not limited to, myocardial infarction and stroke. Nevertheless, Defendants continued to market Vioxx by providing false and misleading information without regard to consumer safety.

138. Defendants' actions as described herein were performed willfully, intentionally and with reckless disregard for the rights of Plaintiffs and the public.

WHEREFORE, Plaintiffs demand judgment against Defendants, in the amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) and in excess of local arbitration limits, exclusive of pre-judgment interest and post-judgment interest.

**JURY TRIAL DEMANDED**

Plaintiffs demand that all issues of fact of this case be tried to a properly impaneled jury.

**KLINE & SPECTER**
***A Professional Corporation***

Dated: 7/28/06

BY: **LEE B. BALEFSKY, ESQUIRE/LB582**

Thomas R. Kline, Esquire
Shanin Specter, Esquire
Lee B. Balefsky, Esquire
Michelle L. Tiger, Esquire
Nineteenth Floor
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000